UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Crim. No.: 4:17-cr-887-RBH |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Roderick Delon Lewis, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on a motion to suppress [ECF No. 25] filed by Defendant Roderick Delon Lewis. A hearing was held on Defendant's motion to suppress on January 19, 2018. After hearing arguments of the lawyers and testimony of the witnesses, the Court took the matter under advisement. For the following reasons, the Court denies Defendant's [ECF No. 25] motion to suppress.

**Factual and Procedural Background**

The pending motion to suppress involves the encounter between Sergeant Townsend and Defendant Lewis on June 12, 2017. Defendant Lewis seeks to suppress the firearm discovered following that encounter.

On the morning of June 12, 2017, Sergeant Townsend of the Dillon Police Department learned of an outstanding warrant for a person with the last name "Lewis." While on patrol later that day, Sergeant Townsend encountered the Defendant, whose last name is "Lewis." Sergeant Townsend was aware of Roderick Lewis through his reputation as a "neighborhood bully" and alleged involvement in drug activity. However, other than the common last name of "Lewis," Sergeant Townsend could not state any other facts to link Lewis to the outstanding warrant he

learned of that morning.[1]

On June 12, 2017, Sergeant Townsend first spotted Defendant Lewis walking down the street while Sergeant Townsend was gassing up his police vehicle at the city gas pump. Lewis was walking to his residence from his mother's house. Sergeant Townsend radioed dispatch to determine whether Lewis was the "Lewis" who had the outstanding warrant. Before receiving a response from dispatch, Sergeant Townsend finished filling up his car with gas and proceeded to Lewis's location.

According to Sergeant Townsend's version of the initial encounter, by the time Sergeant Townsend reached Lewis, Lewis was almost to his residence. Upon reaching Lewis's location, Sergeant Townsend pulled his car up beside Lewis and said "Hey man, let me talk to you for a minute." As Sergeant Townsend exited his patrol vehicle, he told Defendant Lewis to "come here." Defendant Lewis asked, "for what?," and began walking toward Sergeant Townsend. Sergeant Townsend responded that he needed to see Lewis's identification because they had a warrant on a "Lewis" subject. Immediately after Sergeant Townsend mentioned a possible warrant on a Lewis subject, Defendant Lewis turned and fled.

Defendant Lewis's version of the initial encounter differs slightly. Lewis testified that he was walking towards his home and was approximately three feet away from his steps when Sergeant Townsend pulled up in the yard, got out of the vehicle, and told Lewis to turn around and put his hands behind his back, and that he was under arrest. Lewis testified that Sergeant Townsend never asked for ID. Lewis asked Sergeant Townsend what he was being arrested for and Sergeant

---

[1] Originally, the government took the position that Sergeant Townsend knew that the outstanding warrant was either for Roderick Lewis or his brother, Damian Lewis. Sergeant Townsend's testimony revealed he did not know anything other than the warrant was for a "Lewis."

2

Townsend responded by ordering Lewis to "turn around" and put his hands behind his back. Lewis then turned around to walk in his front door. Sergeant Townsend reached for Lewis and Lewis pulled away and ran. Lewis testified that when Sergeant Townsend first approached him, Lewis believed that he could just walk away.

Sergeant Townsend chased after Defendant Lewis, through Lewis's yard, from one side of the house to the other. Sergeant Townsend caught Defendant Lewis on the other side of the house when Lewis unsuccessfully attempted to jump a chain link fence. Sergeant Townsend wrestled with Lewis in an attempt to detain him. As they struggled, a black object, which ended up being a firearm, fell to the ground.

Sergeant Townsend continued to struggle to detain Defendant Lewis for a short time until Lewis stopped fighting, at which point Sergeant Townsend detained him. A passing state trooper stopped to help but Sergeant Townsend had detained Defendant Lewis by that point. Other officers then arrived on the scene.

After detaining Defendant Lewis, Sergeant Townsend discovered that the outstanding warrant was for Defendant Lewis's brother, Damian Lewis. Although Defendant Lewis had an outstanding warrant for pointing and presenting a firearm, there was no testimony that Sergeant Townsend was aware of that particular warrant at the time of Lewis's arrest and detention.

On September 26, 2017, Defendant was indicted in a one count indictment for felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).

## **Discussion**

Lewis argues the firearm should be suppressed because Sergeant Townsend did not possess reasonable suspicion to stop and detain Lewis as required by *Terry v. Ohio*, 392 U.S. 1 (1968).

Lewis argues that sharing a common name with a person who has an outstanding warrant cannot support reasonable suspicion to conduct a *Terry* stop. Therefore, Lewis argues, the stop and detention violated the Fourth Amendment, and the firearm discovered should be suppressed as fruit of the poisonous tree.

The government initially responded to the motion to suppress arguing that Sergeant Townsend had reasonable suspicion to stop Defendant Lewis because Sergeant Townsend knew with certainty that there was a warrant for assault for either Defendant Lewis or his brother, Damian Lewis. However, at the hearing, Sergeant Townsend admitted that he did not know with certainty that the warrant was for one of the Lewis brothers. Instead, Sergeant Townsend testified as follows:

> Q: So that was your motivating factor of stopping him, there's a warrant for a Lewis, this guy is a Lewis, let me check and see if he is the Lewis?
>
> A. That's correct.
>
> Q. Is that your thinking?
>
> A. That's it.

Regardless of whether Sergeant Townsend had reasonable suspicion to initially stop Lewis, the pending motion to suppress turns on the threshold issue of whether a seizure ever occurred to "trigger the protections of the Fourth Amendment" in the first place. *United States v. Brown*, 401 F.3d 588, 593 (4th Cir. 2005). Therefore, the Court must determine whether the initial encounter between Sergeant Townsend and Lewis constituted a seizure sufficient to implicate the Fourth Amendment.

As explained in more detail below, based on the totality of the circumstances, the Court

finds that the initial encounter between Lewis and Sergeant Townsend was a consensual police encounter or, at most, an attempted seizure. Because there was no seizure, there was no Fourth Amendment violation. *See United States v. Stover*, 808 F.3d 991, 995-96 (4th Cir. 2015). The consensual police encounter, or attempted seizure, terminated when Lewis fled from law enforcement at the mention of a possible outstanding warrant. Once Lewis fled from law enforcement, Sergeant Townsend had reasonable suspicion to detain Lewis under *Terry*.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." U.S. Const. amend. IV. This guarantee, however, "does not extend to all police-citizen encounters." *United States v. Jones*, 678 F.3d 293, 298–99 (4th Cir. 2012). Consensual encounters do not implicate the Fourth Amendment, but seizures do. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). The Supreme Court has consistently held, however, "that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Id*.; *see also INS v. Delgado*, 466 U.S. 210, 216 (1984) (interrogation relating to one's identity or a request for identification does not, by itself, implicate the Fourth Amendment).

As a general matter, law enforcement officers do not seize individuals "merely by approaching [them] on the street or in other public places and putting questions to them." *United States v. Drayton*, 536 U.S. 194, 200 (2002). Rather, as the Supreme Court has explained, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).

It appears no one disputes that there was no physical application of force or actual physical restraint. Therefore, where, as here, physical force is absent, a seizure requires both a "show of

5

authority" from law enforcement officers and "submission to the assertion of authority" by the defendant. *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

To determine whether police have displayed a show of authority sufficient to implicate the Fourth Amendment, a court applies the objective test set forth in *United States v. Mendenhall*, 446 U.S. 544 (1980). The police have displayed a show of authority "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Stover*, 808 at 995 (citing *Mendenhall*, 446 U.S. at 554).

Specific factors to consider in determining whether police have made a "show of authority" so that a reasonable person would not feel free to leave include: (I) the number of police officers present at the scene; (ii) whether the police officers were in uniform; (iii) whether the police officers displayed their weapons; (iv) whether the police officers touched the defendant or made any attempt to physically block his departure or restrain his movement; (v) the use of language or tone of voice indicating that compliance with the officer's request might be compelled; (vi) whether the officers informed the defendant that they suspected him of illegal activity rather than treating the encounter as routine in nature; and (vii) whether, if the officer requested from the defendant some form of official identification, then promptly returned it. *United States v. Black*, 707 F.3d 531, 537-38 (4th Cir. 2013) (citing *Mendenhall*, 446 U.S. at 554).

In this case, Sergeant Townsend did not display a "show of authority" sufficient to implicate the Fourth Amendment. The Court bases that finding on the testimony of Sergeant Townsend and Defendant Lewis. Sergeant Townsend's testimony at the hearing was credible. Certain portions of Lewis's testimony were also credible; particularly, Lewis's testimony that he felt free to leave when he first encountered Sergeant Townsend.

Applying the *Mendenhall* factors to this case compels a finding and conclusion that Defendant Lewis was not seized because a reasonable person under the circumstances would have felt free to leave and terminate the encounter with Sergeant Townsend. There was only one officer present at the scene. Although Sergeant Townsend was in uniform, he did not display his weapon. Sergeant Townsend did not touch Lewis or make any attempt, nor was he able, to block his departure prior to Lewis's flight. The language used by Sergeant Townsend was informal and non-threatening, "Hey man, let me talk to you for a minute." Sergeant Townsend asked Lewis to "come here" but Lewis did not comply, instead Lewis asked Sergeant Townsend "for what?" When Sergeant Townsend informed Lewis that he needed to see Lewis's identification and that there was a warrant for a "Lewis" subject, Lewis fled and terminated what, up until that point, had been a consensual police encounter. Importantly, Lewis himself testified that he felt he had the right to simply walk away from Sergeant Townsend. Based on the totality of the circumstances, a reasonable person would have felt free to disregard Sergeant Townsend's questions and walk away. Accordingly, the Court finds, under the totality of the circumstances, that there was no "show of authority" sufficient to constitute a seizure and implicate the Fourth Amendment. Thus, the Court finds no seizure occurred.

Even if there was a sufficient "show of authority," the defendant must *submit* to law enforcement's assertion of authority for a seizure to have occurred. *Hodari D.*, 499 U.S. at 626-28. When submission to police authority is disputed, a court must also ascertain whether and when the subject of the seizure actually acquiesced to that authority. *Id*. at 628–29. "[W]ithout actual submission" to the police, "there is at most an attempted seizure," which is not subject to Fourth Amendment protection. *Brendlin v. California*, 551 U.S. 249, 254 (2007); *see also Hodari D.*, 499

7

U.S. at 626–27 & n. 2. Lewis's own testimony supports a finding of no submission for Fourth Amendment purposes.

Critically, Lewis does not argue or appear to contend that he submitted to any police authority. Lewis's testimony at the hearing confirms that he did not submit to Sergeant Townsend. Lewis stated "he just told me turn around and put my hands behind my back I was under arrest . . . so I turned, I asked him for what, he said just turn around and put my hands behind my back, so I turned around and walked to the door, because he never said why and he reached for me, so I pulled away and ran." The encounter, as described by Lewis, is at most an "attempted seizure" and not subject to Fourth Amendment protection. *Brendlin*, 551 U.S. at 254.

Sergeant Townsend's description of the encounter also indicates that Lewis did not submit to any "show of authority." Sergeant Townsend asked Lewis to "come here" so Townsend could check Lewis's identification. Lewis did not comply, but instead asked "for what?" When Sergeant Townsend answered Lewis's question and told him that police had a warrant for a "Lewis" subject, Lewis turned and ran. Sergeant Townsend indicated in his report that Lewis initially walked towards his patrol vehicle, but ran when Sergeant Townsend mentioned a warrant. Although not in his report, Sergeant Townsend also indicated that Lewis pulled his wallet out to hand an ID before running. There is no testimony that Sergeant Townsend was actually given the wallet or ID. At best, Sergeant Townsend's version is that Lewis momentarily walked in his direction, may have pulled his wallet out to hand an ID, and ran once he heard about a warrant.

Under Lewis's version, clearly there was no submission. Under Sergeant Townsend's version, the Court finds that even this momentary brief conduct did not constitute submission in any realistic sense. In summary, considering the totality of the circumstances, Lewis did not submit to

8

any show of authority by law enforcement until he was caught after fleeing.

Lewis only submitted to Sergeant Townsend when he was caught on the chain link fence and detained after fleeing. A defendant who flees the police in response to an assertion of authority has not been seized, and thus his Fourth Amendment rights are not implicated. *Hodari D.*, 499 U.S. at 626, 629. Up and until Lewis submitted after fleeing, "there [was] at most an attempted seizure, so far as the Fourth Amendment is concerned," and the Supreme Court has held that the Fourth Amendment does not protect attempted seizures. *See Brendlin*, 551 U.S. at 254. The "attempted seizure" in this case does not trigger Fourth Amendment protections.

Lewis's flight at the mention of the word warrant created reasonable suspicion for Sergeant Townsend to pursue Lewis and detain him under *Terry*. *See, e.g. Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (recognizing that "headlong flight - wherever it occurs - is the consummate act of evasion" and can create reasonable suspicion). Because there was no seizure prior to Lewis's flight, there was no Fourth Amendment violation. Accordingly, Defendant Lewis's motion to suppress is denied. As there was no seizure, there is no need to resolve whether Sergeant Townsend had reasonable suspicion to initially approach Lewis.

## Conclusion

For the reasons stated above, Defendant Lewis's [25] motion to suppress is **DENIED**.

IT IS SO ORDERED.

| | |
|---|---|
| February 12, 2018 | s/ R. Bryan Harwell |
| Florence, South Carolina | R. Bryan Harwell |
| | United States District Judge |